MOON et al. v. THOMAS, Mayor, et al. (No. 10945.)

(Court of Civil Appeals of Texas. Fort Worth. March 8, 1924. Rehearing Denied April 26, 1924.)

1. **Injunction** ⬄13 — **Substantial injury to plaintiff necessary to be shown to obtain writ.**

To obtain injunction, some substantial injury to plaintiff must be shown as reasonably certain to result if writ is not issued; mere possibility of injury being insufficient.

2. **Injunction** ⬄161—**Judge, issuing temporary writ, may dissolve it, on verified answer denying equities.**

Judge, who issues temporary writ, may, in his discretion, dissolve it on verified answer denying equities of bill.

3. **Injunction** ⬄163(1)—**Temporary writ to restrain city council from appropriating net revenues of waterworks to pay interest on waterworks debt and create sinking fund held properly dissolved.**

Where city council of Gainesville, granted special charter by Act March 17, 1909, amended by Acts of February 25, 1911 (Loc. & Sp. Laws 1911, c. 12), and March 6, 1917 (Loc. & Sp. Laws 1917, c. 43), appropriated from revenues of waterworks, fund to pay interest and sinking fund on waterworks interest payment due September 1, 1923, and provided that tax levy for current year should not be applied on waterworks funds because payment of interest and sinking fund had already been provided, in suit

by taxpayers to restrain city from applying named sum from ad valorem tax to other purpose than payment of interest and to create sinking fund on waterworks debt, in view of Vernon's Ann. Civ. St. Supp. 1918, art. 884a, providing that city councils may apply net revenues from public utilities to payment of sinking fund and interest, *held*, that there was no error in dissolving temporary writ.

Appeal from District Court, Cooke County; C. R. Pearman, Judge.

Suit by J. J. Moon and another against J. A. Thomas, Mayor, and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

J. T. Adams, Jas. Ralph Bell, and W. O. Davis, all of Gainesville, for appellants.

W. L. Blanton and Culp, Culp & Culp, all of Gainesville, for appellees.

DUNKLIN, J. By an act of the Legislature, which was approved March 17, 1909 (Loc. & Sp. Laws 1909, c. 81), the city of Gainesville was granted a special charter which was duly adopted by the qualified voters of the city at an election held in accordance with the provisions of the charter. By virtue of the powers given by the charter, bonds were issued by the city, known as the waterworks bonds. The bonds were issued for the purpose of acquiring and improving the waterworks system of the city. There were 150 of those bonds, in denominations of the principal sum of $1,000 each, or in the aggregate of $150,000. They were dated March 1, 1911, bore interest at the rate of 5 per cent. per annum, payable semiannually, the principal being payable 40 years from date, with the privilege, however, to the city to pay the whole or any part of the principals of said bonds after the expiration of 10 years from date. In accordance with the requirements of the charter at the time of their issuance, provision was made for the creation of a sinking fund sufficient to pay the bonds at maturity and for the payment of interest thereon as it matures.

By another act of the Legislature, approved February 25, 1911 (Loc. & Sp. Laws 1911, c. 12), the charter of the city was so amended as to authorize and require the city council of Gainesville to appoint a board of water commissioners composed of five members, and the act contained the following:

"Such commission shall have the power to control, manage and operate any water plant now owned, or to be hereafter owned, by said city, and to make contracts for the improvement, betterment and extension of such works, and shall have general supervision of said works. * * * Said water commission shall have the power to do whatever is necessary for the management, control and efficient operation of such waterworks."

---

⬄For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

By another act of the Legislature, approved March 6, 1917 (Loc. & Sp. Laws 1917, c. 43), the charter was again amended, and section 1 of that act, amending section 4, reads as follows:

"Said water commission shall have power to prescribe rules and regulations concerning the use of water furnished by said works, and shall subject to the approval of the city council, prescribe the water rates; and said commission shall have the power to employ a superintendent and such other employees as may be necessary for the successful operation of such works, and subject to the approval of the city council, shall prescribe the wages of such superintendent and other employees; provided, however, that subject to the provisions hereof, said commission shall turn over to the city treasurer of said city any and all money now on hand and that may hereafter be derived from the sale of water by said commission for the use and benefit of said city; provided, further, said commission shall retain in its possession and subject to its control a sum of money not to exceed fifteen thousand dollars for operating, betterment, improvement and extension of such works."

By charter provisions the fiscal year of the city begins the first Tuesday in April of each year and closes with the last day of the twelve months next ensuing thereafter, and it is made the duty of the council at its first meeting in April to fix an annual budget of current expenses of the city for the next ensuing year and to assess taxes to meet the same. By article 3 of the charter the city council is given the power to levy an annual ad valorem tax for general purposes and for the purpose of paying interest and providing a sinking fund on the city's outstanding bonded indebtedness.

On August 14, 1923, at a regular meeting of the city council, a motion was made and carried by unanimous vote that there should be appropriated "from the revenues derived from the operation of the waterworks a fund sufficient to pay the interest and sinking fund on the waterworks interest payment, due September 1." At the same meeting of the council a motion was passed by a majority vote of 7 to 1 of the council fixing the tax rate for the year 1923 to serve as a basis for the levy of taxes for that year. The total rate so fixed was $1.70 on the $100 valuation, apportioned for numerous purposes specified; and .482 was for general purposes.

On September 4, 1923, an ordinance was passed by the city council levying the tax for the purposes and at the rates theretofore determined by the motion referred to above, except that the rate of taxation for general purposes was reduced to .462 and that for the public library was raised from 4 cents to 6 cents, making the aggregate, however, $1.70 on the $100 valuation. That ordinance was adopted by a majority vote of 8 to 1. But that ordinance contained a provision which was to the effect that the tax levy so made would not be applied on the waterworks bonds because payment of interest and a sinking fund on those bonds had already been provided for by appropriation made out of the revenues derived from the waterworks, as shown by the motion referred to above, passed August 14, 1923.

J. J. Moon and H. L. Frasher, property taxpaying resident citizens of the city of Gainesville, instituted this suit against the members of the city council and its mayor and other executive officers to restrain the defendants from applying $8,850 of the net revenues of the city arising from the ad valorem tax for the year 1923 to any other purpose than the payment of interest and providing a sinking fund on said outstanding waterworks bonds, and to require said fund to be set aside for those purposes. It was alleged in the petition that 48 of the bonds had already been taken up and canceled by the city, leaving 102 bonds still outstanding in the hands of bona fide purchasers.

Plaintiffs alleged that the city was bound by contract with the bondholders to levy an annual tax to meet interest and provide for a sinking fund on all the outstanding waterworks bonds, and that under the charter the city council was required to make such levy. It was further alleged that, the future earnings of the waterworks system being contingent and uncertain, the council could not discharge the city's obligation to the bondholders by appropriating such revenues in advance for that purpose, and especially since the board of waterworks commissioners is vested with authority, under the charter provision above copied, to retain within its control as much as $15,000 out of the earnings of the system to cover expenses of operation, betterment, improvement, and extension.

It was charged in the petition that the action of the council in refusing to levy a tax to meet the annual interest and to provide a sinking fund for the outstanding bonds would amount to a repudiation of the bonds, and that such was the purpose of the council. It was further alleged that the levy of $1.70 on the $100 property valuation was the maximum levy that could be made under the special charter of the city, and that it was the intention of the council to appropriate the entire levy of taxes to purposes other than the payment of the interest and sinking fund on the outstanding waterworks bonds. The plaintiffs' petition contained this further allegation:

"The water commissioners, at the time of the supposed enactment of said tax ordinance, had on hand the sum of $12,704.70, including 10 of said waterworks bonds, in which its net earnings had been invested, which was $2,295.30 less than its reserve of $15,000, and its ability to earn during the fiscal year of 1923 sufficient

above its reserve to pay the interest and sinking fund upon said bonds, is altogether improbable and depends upon contingencies that no one can foresee. * * *

"The interest and sinking fund upon said bonds for the present fiscal year aggregates $8,-850, and there should be reserved from the ad valorem taxes that sum, $5,100 of which should be applied to the interest on said bonds and $3,750 set aside as a sinking fund."

It was further alleged that the tax ordinance was illegally enacted and was therefore void because passed on the same day it was offered and in the absence of a suspension of the rules by a majority vote of the full board, requiring such an ordinance to be enacted at its third reading.

The temporary writ of injunction prayed for was granted, but the same was dissolved on motion of the defendants, which was duly verified. The petition for injunction was filed on November 30, 1923. The following is taken from the minutes of the city council at a meeting held by it December 20, 1923:

"Carl F. Moore, chairman of the water commission, informed the council that the commission had paid off and canceled $15,000.00 waterworks bonds (Nos. 25, 27, 28, 29, 30, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, aggregating $15,000.00), which they desired to present to the council for their files. The bonds were received with thanks by the council, but the matter brought up quite a discussion as to the rights of the water commission, whereupon Alderman O'Neal offered the following resolution:

" 'Whereas, the water commission having purchased $15,000.00 of waterworks bonds, outstanding indebtedness of the city of Gainesville, Texas, which had not matured, but are now presented to the city council for legal cancellation; and

" 'Whereas, by a resolution duly adopted and passed by the city council of the city of Gainesville, Texas, on the 14th day of August, 1923, did appropriate and set aside, out of the net revenues of the waterworks system, a sum sufficient to meet the interest and sinking fund on the bonded indebtedness of such waterworks system for the fiscal year 1923–1924:

" 'Therefore, be it resolved, by the city council of the city of Gainesville, Texas, sitting in adjourned session this, the 20th day of December, 1923, having adjourned from its regular meeting of December 18, 1923, as follows:

" 'That $4,000.00 of the $15,000.00 now up for cancellation is out of and a part of the above-mentioned appropriation, and is hereby intended to apply on the city's indebtedness to the bondholders of the waterworks bonds for the fiscal year 1923–1924, and that said appropriation is now reduced to $4,500.00, an amount sufficient to meet the semiannual interest payments for the year 1924. With these reservations, duly noted and agreed to, the following waterworks bonds are hereby duly canceled: Nos. 25, 27, 28, 29, 30, 141, 142, 143, 144, 145, 146, 147, 148, 149 and 150.'

"The adoption of this resolution was seconded by Alderman Greever. A yea and nay vote being called for, resulted as follows: Yea: Johnson, Nelson, Bell, O'Neal, Greever, Tanner, and Smith. Nay: Davis. Absent: McDaniel and Robertson.

"The mayor then declared the resolution adopted. The $15,000.00 canceled waterworks bonds were then turned over to the city secretary for his files.

"Alderman O'Neal then offered the following motion, seconded by Tanner: A motion that the mayor be instructed to advise the water commission that the city council requests that all the net proceeds derived from the operation of the waterworks system, be turned into the city treasury each month, except the amount actually needed or anticipated as an emergency fund, but not to exceed $15,000.00. Adopted by yea and nay vote, as follows: Yea: Johnson, Nelson, Bell, O'Neal, Greever, Tanner, Smith. Nay: Davis. The mayor then declared the motion adopted."

It thus appears that 15 of the waterworks bonds, aggregating the principal sum of $15,-000, were taken up and canceled by the city council on December 20th, 20 days after plaintiffs' petition was filed. Those 15 bonds added to the 48 which plaintiffs alleged had been taken up prior to the filing of the petition makes an aggregate of 63 bonds which have been taken up and canceled by the city; the last 15 being paid off entirely out of the net earnings of the waterworks system.

By special exception, the defendants challenged the right of plaintiffs to maintain the suit, in which they invoked the provisions of article 9, § 1, of the city's charter. By that article property taxpaying citizens are given the right to institute suits of specified kinds against the city council and other officials, to protect the public interest of citizens; but the cause of action asserted in this suit is not embraced in any of those classes.

In their verified motion to dissolve the injunction, the defendants, comprising the city council, expressly denied any intention to repudiate the waterworks' bonds. On the contrary, they expressly allege that it is the full intention of the city council to meet the interest and sinking fund on those bonds, and that the course they have pursued, as shown in the resolution passed, will result in a saving of expense to the city. They further allege that the interest on the outstanding bonds for the year 1924 will amount to $4,350, of which amount $2,175 will be due in March, and the same amount in September. In their motion they expressly claim the right to use the taxes to be raised for general purposes to the payment of the annual interest on the outstanding bonds and to provide a sinking fund to meet the same, if such action becomes necessary. And while the motion contains no express allegation of an intention on the part of the council to follow that course, perhaps such intention may be implied. But aside from those allegations in the motion, it is to be observed that plaintiffs are not the owners of any of the outstanding waterworks bonds, and the suit is not instituted by authority of any of

those bondholders. Nor is there any allegation that the bondholders are making any complaint of the course pursued by the city council relative to caring for those bonds. It is. to be observed further that this suit is not a proceeding by mandamus to compel the council to levy a tax to meet the interest and sinking fund on the bonds. Furthermore, the plaintiffs fail to show that the expected revenues from the waterworks system. will be insufficient to meet the interest and sinking fund, at all events.

The petition also fails to show that the waterworks commission is opposed to the resolution of the city council to apply the future net earnings of the system to such interest and sinking fund. While it is true that the charter provision authorizes the water commission to retain in their control a sum not to exceed $15,000 for improvements and betterments of the waterworks plant, it does not compel them to do so. And the petition fails to show that the commission has elected to retain any sum out of such net earnings for the purpose of improving the system, or that there will be any necessity for such improvements.

The petition further fails to show that the taxes of the city will be in any manner increased by the proposed action of the council; nor is there any allegation that the credit of the city will be impaired by following that course.

Article 884a, Vernon's Tex. Civ. Statutes, 1918 Supplement, reads as follows:

"That the city council or board of aldermen or other governing body of any city or town in this state, whether operating under special charter or under the general law, may appropriate and apply at the end of each fiscal year so much of the net revenues of its waterworks system or other public utility system, service or enterprise as said governing body shall deem to the best interest of said city or town, to the payment of the sinking fund and interest due by said city or town, on the bonded indebtedness incurred on account of said waterworks system or other public utility system, service or enterprise, producing such revenues."

The following is a portion of article 4 of the charter of the city of Gainesville:

"The ordinance authorizing any bonds to be issued shall provide for the creation. of a sinking fund sufficient to pay the bonds at maturity and make provisions for payment of interest thereof as it matures and said sinking fund may be invested in the bonds of the. state of Texas or in bonds issued by the counties of the state of Texas or such funds may be used for the purchase of bonds of the city of Gainesville which are not yet due, and neither interest or sinking fund shall be devoted to any other purpose whatever."

[1-3] It is a familiar rule that to obtain a writ of injunction some substantial injury to the plaintiff must be shown as rea-sonably certain to result if the writ is not issued. A mere possibility that injury may occur is not a sufficient showing. It is a further rule that a judge who issues a temporary writ may, in his discretion, dissolve the same upon a verified answer filed by the defendant denying all the equities of the bill. Spence v. Fenchler (Tex. Civ. App.) 151 S. W. 1094; Lone Star Lodge v. Cole, 62 Tex. Civ. App. 500, 131 S. W. 1180; Frazier v. Coleman (Tex. Civ .App.) 111 S. W. 662; Caruthers v. Harnett, 67 Tex. 127, 2 S. W. 523. Under those authorities, and in view of the facts and pleadings above noted, we are unable to say that the court erred in dissolving the temporary writ of injunction. And that conclusion renders it unnecessary to determine the further question as to whether or not plaintiffs had the legal capacity or right to maintain the suit solely by reason of the fact that they were resident property taxpaying citizens of Gainesville

Accordingly, the judgment from which the appeal is prosecuted is affirmed.